ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| MARIBEL ALEMAÑY PONS Y OTROS<br><br>RECURRIDA<br><br>v.<br><br>LOURDES PILAR ALEMAÑY PONS<br><br>PETICIONARIA | TA2025CE00913 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. ISCI-2014-00126<br><br><br>Sobre: Liquidación de Sociedad Legal de Gananciales y Partición de Herencia |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2026.

Comparece la señora Lourdes Pilar Alemañy Pons (en adelante, señora Lourdes Alemañy o peticionaria) mediante un recurso de *Certiorari* en el que nos solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI o foro primario), el 18 de noviembre de 2025 y notificada en la misma fecha. Mediante el referido dictamen, el foro primario declaró Ha Lugar una *Moción sobre Reconsideración* presentada el 10 de septiembre de 2025 y dejó sin efecto la determinación contenida en la *Sentencia Sumaria Parcial* dictada el 25 de octubre de 2021.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

**I.**

El 20 de enero de 2014, Maribel Alemañy Pons, Jaime Juan Alemañy Pons, María del Carmen Alemañy Pons (en conjunto, los recurridos) y Catalina Pons Frontera (en adelante, señora Pons Frontera), esta última

representada por su tutora legal[1], presentaron una *Demanda*[2] contra la señora Lourdes Alemañy, en la cual solicitaron la liquidación de la sociedad legal de gananciales constituida entre la señora Pons Frontera y su difunto esposo, el señor Jaime Luis Alemañy Arana (en adelante, señor Alemañy Arana), así como la partición del caudal hereditario correspondiente a este último. Alegaron que la sociedad de gananciales no había sido liquidada y que diversos activos permanecían en estado de indivisión. Señalaron que la peticionaria se había negado a participar en una partición extrajudicial y a proveer información sobre activos bajo su control. Asimismo, solicitaron que se evaluara la designación de un defensor judicial para la señora Pons Frontera debido a que esta había sido declarada incapaz y a que podían existir posibles conflictos de interés con su tutora, la señora María del Carmen Alemañy Pons, quien también era heredera del señor Alemañy Arana.

El 30 de abril de 2014, la peticionaria presentó su *Contestación a la Demanda y Reconvención*[3], en la cual aceptó y negó parcialmente las alegaciones formuladas y levantó diversas defensas afirmativas. Como parte de sus alegaciones responsivas, alegó, entre otras cosas, que había confusión de bienes entre el caudal ganancial y el caudal hereditario, particularmente en lo relacionado con cuentas de inversión en Primerica Financial Services y otros activos que no habían sido incluidos en la planilla de caudal relicto del señor Alemañy Arana.

Posteriormente, los recurridos contestaron la reconvención y, tras varios escritos adicionales, el 29 de octubre de 2014 presentaron una *Demanda Enmendada*[4], en la que ampliaron sus alegaciones y plantearon expresamente la nulidad de ciertos transacciones realizadas por la señora Pons Frontera en 2008, mediante las cuales, alegadamente inducida por la

---

[1] La tutora legal era la señora María del Carmen Alemañy Pons, quien, según se alega en la *Demanda*, fue designada como tal en el Caso Civil Núm. ISRF2012-00537.

[2] Apéndice #1 del recurso de *certiorari*.

[3] Apéndice #6 del recurso de *certiorari*.

[4] Apéndice #9 del recurso de *certiorari*.

parte peticionaria, a través de un *Joint Tenant with of Survivorship*, al fallecer esta, la peticionaria se convertiría en dueña de las cuentas de Primerica y American Funds y otras cuentas bancarias. Ello, a pesar de la condición mental y el diagnóstico de Alzheimer de la señora Pons Frontera al momento de llevar a cabo dichas transacciones.

Tras varios incidentes procesales, y como resultado de una vista evidenciaria celebrada el 18 de enero de 2019, el TPI emitió una *Resolución*[5] el 20 de febrero de 2019 en la cual determinó que, como cuestión de hecho y de derecho, desde el año 2006 la señora Pons Frontera padecía de Alzheimer, condición que la privó de la capacidad mental necesaria para administrar sus propiedades inmuebles, atender transacciones bancarias, efectuar o consentir válidamente transacciones de negocios relacionados con sus bienes, finanzas o inversiones, así como realizar transacciones de negocios tales como compraventas, donaciones o de cualquier otro tipo relacionadas a sus bienes. Dicha determinación se basó en prueba pericial y testifical creída por el foro primario y, aunque se presentaron recursos apelativos ante este foro, los mismos fueron denegados, por lo que la *Resolución* advino final y firme.

Posteriormente, el 26 de agosto de 2021, los recurridos presentaron una *Solicitud de Sentencia Sumaria Parcial*[6], mediante la cual solicitaron que el tribunal declarara la nulidad de la inclusión de la señora Lourdes Alemañy como titular de las cuentas de inversión de Primerica y American Funds sobre las cuales la señora Pons Frontera había otorgado el documento de *Joint Tenants with Right of Survivorships* en 2008, argumentando que en ese momento no se había llevado el proceso de liquidación de la comunidad post ganancial y por tanto no podía disponer de ningún bien específico de dicha

---

[5] Apéndice #13 del recurso de *certiorari.*
[6] Apéndice #14 del recurso de *certiorari.*

comunidad.[7] La peticionaria presentó su oposición a la moción de sentencia sumaria parcial[8], planteando, entre otros asuntos, que la moción no cumplía con los requisitos exigidos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, y que el TPI no tenía jurisdicción para atender los planteamientos relacionados a las cuentas de Primerica.

Así las cosas, el 25 de octubre de 2021, el foro primario emitió una *Sentencia Sumaria Parcial*[9], en la cual estableció como Hechos Incontrovertidos los siguientes:

1. Los causantes, Jaime Alema[ñ]y Arana y Catalina Pons Frontera, contrajeron matrimonio en Mayagüez, Puerto Rico, el 21 de enero de 1955.

2. El causante Jaime Alema[ñ]y Arana falleció intestado el 15 de septiembre de 1996.

3. Al momento de su muerte, don Jaime tenía a su nombre tres cuentas de inversiones, doña Catalina era beneficiaria de estas cuentas con derecho a sobrevivencia y pasó [a] ser la titular. [...]

4. Estas cuentas pasaron al caudal relicto de don Jaime.

5. El tribunal dictó Resolución declarando herederos a su viuda, Catalina Pons Frontera, y a sus hijos, Maribel, María del Carmen, Lourdes Pilar y Jaime Juan todos de apellidos Alemañy Pons.

6. Allá para el 2008, la demandada cerró cinco cuentas pertenecientes a doña Catalina y transfirió esos fondos a cuentas mancomunadas con derecho a supervivencia, de las cuales se hizo beneficiaria. [...]

7. En 2010, Primerica Financial Services – manejadora de las cuentas de inversión – envió una carta a sus clientes informando el cambio de carácter de las cuentas mancomunadas con derecho a sobrevivencia y convirtiéndolas en cuentas solidarias.

8. Estas cuentas, sin importar su carácter[,] también forman parte del caudal relicto de doña Catalina.

9. La causante Catalina Pons falleció intestada el 2 de abril de 2018.

10. El Tribunal dictó el 22 de julio de 2018 en el Caso I1CI20180484 declarando herederos a sus hijos Maribel,

---

[7] De dicha moción surge, además, que la señora Pons Frontera falleció el 2 de abril de 2018, mientras el pleito continuaba vigente.
[8] Apéndice #15 del recurso de *certiorari*.
[9] Apéndice #16 del recurso de *certiorari*.

María del Carmen, Lourdes Pilar y Jaime Juan, todos de apellidos Alemañy Pons.

11.   Los bienes hereditarios de los causantes don Jaime y doña Catalina no han sido divididos o adjudicados[;] como parte del caudal relicto se identifican ocho cuentas de inversión.

Asimismo, el TPI estableció como **Asuntos en Controversia**:

1. **La capacidad jurídica de doña Catalina a la fecha de suscribir los documentos** titulados *Joint Tenant With Right of Survivorship*.

2. Si la demanda[sic] indujo impropiamente a doña Catalina a que firmara los documentos titulados *Joint Tenant With Right of Survivorship*.

El foro primario determinó que la mayoría de los hechos estaban claros e incontrovertidos y que procedía que se dictara sentencia sumaria parcial sobre las cuestiones planteadas. A esos efectos, concluyó que la actuación de Primerica Financial Services —al convertir las cuentas de inversión mancomunadas con derecho de sobrevivencia en cuentas solidarias— constituyó una donación *inter vivos* realizada por la señora Pons Frontera a favor de la peticionaria, su hija y heredera forzosa. Por otro lado, señaló que la inclusión de la señora Lourdes Alemañy como dueña con derecho de sobrevivencia en las cuentas de inversión era incorrecta y que esta debía concurrir como heredera forzosa al acto de colación para que las donaciones hechas en vida por su madre se computaran como parte de la legítima.[10]

La peticionaria presentó una *Moción de Solicitud Reconsideración de Sentencia Sumaria Parcial*[11], la cual fue denegada mediante *Resolución*[12] del 19 de enero de 2022.

Años más tarde, el 17 de junio de 2025, los recurridos presentaron un *Memorando de Derecho de la Parte Demandante*[13], en el cual volvieron a plantear que las transacciones hechas por la señora Pons Frontera en 2008 eran nulas por falta de capacidad mental de la causante y por violar normas

---

[10] Véase Apéndice #16 del recurso de *certiorari*.
[11] Apéndice #17 del recurso de *certiorari*.
[12] Apéndice #18 del recurso de *certiorari*.
[13] Apéndice #19 del recurso de *certiorari*.

del Código Civil de Puerto Rico y la Ley Uniforme de Valores, solicitando que el tribunal dejara sin efecto los documentos de conversión de las cuentas.

Por su parte, el 24 de junio de 2025 la peticionaria presentó su *Memorando de Derecho*[14], alegando que la controversia sobre la validez de la transferencia de las cuentas ya había sido adjudicada mediante la *Sentencia Sumaria Parcial* dictada el 25 de octubre de 2021 y que cualquier nuevo intento de impugnarla estaba impedido por la doctrina del impedimento colateral por sentencia y por la ley del caso. Asimismo, sostuvo que mediante el referido dictamen el TPI había resuelto expresamente que tales actos constituyeron una donación *inter vivos*, sujetas a colación, y no una donación *mortis causa* inválida, como planteaban los recurridos en su escrito. Además, argumentó que, a través de su determinación del 2021, el foro primario había reconocido tácitamente la capacidad mental de la señora Pons Frontera al momento de realizar dichas gestiones.

Así las cosas, el 28 de agosto de 2025, el TPI emitió una *Resolución*[15] en la cual determinó que no procedía reexaminar la validez o nulidad de las transferencias, por entender que dicha controversia había sido previamente adjudicada en la *Sentencia Sumaria Parcial* de 25 de octubre de 2021. En consecuencia, declaró No Ha Lugar la solicitud de nulidad presentada por los recurridos y ordenó que, en el proceso de partición del caudal hereditario, se procediera a la colación del valor de la transferencia, conforme a las disposiciones del Código Civil.

Inconformes, el 10 de septiembre de 2025, los recurridos presentaron una *Moción sobre Reconsideración*[16], alegando que el foro primario había errado al aplicar la doctrina del impedimento colateral, ya que la incapacidad mental de la causante había sido declarada judicialmente en 2019 y que el acto realizado en 2008 cuando la señora Pons Frontera, según determinó el

---

[14] Apéndice #20 del recurso de *certiorari*.
[15] Apéndice #23 del recurso de *certiorari*.
[16] Apéndice #24 del recurso de *certiorari*.

propio tribunal, ya se encontraba mentalmente incapacitada, constituía un acto nulo que, por tanto, no podía producir efectos jurídicos válidos.

La peticionaria presentó su *Réplica a Moción sobre Reconsideración*[17], sosteniendo que la moción era improcedente y que pretendía reabrir una sentencia final y firme.

Atendidos los planteamientos, el 18 de noviembre de 2025, el TPI emitió una *Resolución*[18] en la que declaró Ha Lugar la *Moción sobre Reconsideración* y dejó sin efecto la determinación contenida en la *Sentencia Sumaria Parcial* del 25 de octubre de 2021, en cuanto validaba el documento titulado *Joint Tenancy with Right of Survivorship*, por ser contradictoria con la *Resolución* emitida el 25 de febrero de 2019. El TPI estableció que la contradicción entre ambas determinaciones, la *Resolución* de 2019 y la *Sentencia Sumaria Parcial* de 2021, no podía sostenerse por contravenir la doctrina de la ley del caso. En su análisis, el foro primario dispuso que en la *Sentencia Sumaria Parcial* no se resolvieron en su totalidad las controversias planteadas y que la misma tampoco incluyó la certificación exigida por la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, por lo que dicha determinación no constituía cosa juzgada y estaba sujeta a revisión por el propio foro. A esos efectos, determinó que el documento firmado por la señora Pons Frontera en 2008 era inválido e ineficaz y que los activos en esas cuentas no serían colacionables, sino que retornarían al caudal relicto de la causante.

Insatisfecha, el 17 de diciembre de 2025 la peticionaria acudió ante este Tribunal mediante recurso de *Certiorari* en el cual señala que el TPI cometió los siguientes errores:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DEJAR SIN EFECTO UNA SENTENCIA SUMARIA PARCIAL QUE HABÍA ADVENIDO FINAL Y FIRME CUANDO ELLO CONSTITUYE EN EJERCICIO DE UNA FACULTAD EXCLUSIVA DE ESTE TRIBUNAL DE APELACIONES.**

---

[17] Apéndice #24 del recurso de *certiorari*.
[18] Apéndice #2 del recurso de *certiorari*.

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ENTRAR A CONSIDERAR LA NATURALEZA, LOS MÉRITOS Y EL ALCANCE DE UNA SENTENCIA SUMARIA PARCIAL CUYA REVISIÓN NO FUE SOLICITADA AL FORO APELATIVO CORRESPONDIENTE DENTRO DE LOS TÉRMINOS QUE DISPONE LA LEY.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE UNA RESOLUCIÓN INTERLOCUTORIA CONSTITUYE LA LEY DEL CASO Y CON ELLO UN IMPEDIMENTO COLATERAL EN RELACIÓN A UNA SENTENCIA SUMARIA FINAL.**

El 7 de enero de 2026 la parte recurrida presentó su *Oposición a Petición de Certiorari.*

Con el beneficio de la comparecencia de ambas partes, el Derecho y la jurisprudencia aplicable, estamos en posición de resolver.

## II.

### *A. Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra,* pág. 337; *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo, supra,* pág.

372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank de Puerto Rico v. Zaf Corporation*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

A esos efectos, acreditada debidamente nuestra autoridad para intervenir en el asunto recurrido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, establece los criterios que deben guiar nuestra determinación sobre si procede o no expedir un auto de *certiorari*. *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019). Los criterios esbozados son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

## B. Finalidad de una determinación del foro primario

La Regla 42.1 de las Reglas de Procedimiento Civil define la sentencia como cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. 32 LPRA Ap. V, R. 42.1. En ese sentido, la sentencia constituye aquella determinación del tribunal que "pone fin a la controversia existente entre las partes mediante una adjudicación final". *García v. Padró, supra*, pág. 332; *US Fire Ins. v. AEE*, 151 DPR 962, 967 (2000). Es sentencia final aquella que resuelve la totalidad de las controversias entre las partes, de forma tal que no quede asunto alguno pendiente de adjudicación, salvo su ejecución. *García v. Padró, supra.* Asimismo, un dictamen tendrá carácter de sentencia final en la medida en que contra él proceda el recurso de apelación. *US Fire Ins. v. AEE, supra.*

Por su parte, la sentencia parcial es aquella determinación que emite el Tribunal de Primera Instancia en los casos que involucran múltiples controversias o partes, mediante la cual se resuelve de manera final una o

varias reclamaciones, o la totalidad de las reclamaciones en cuanto a una de las partes. La Regla 42.3 de las Reglas de Procedimiento Civil regula este tipo de dictamen y dispone que será una sentencia parcial final cuando el tribunal le confiera expresamente carácter de finalidad. Ello requiere el cumplimiento de dos requisitos esenciales: (1) **que el juzgador concluya expresamente que no existe razón para posponer dictar sentencia hasta la resolución final del pleito**, y (2) que ordene expresamente su registro y notificación. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *Johnson & Johnson v. Mun. San de Juan*, 172 DPR 840, 849 (2008). (Énfasis nuestro). De esa manera, el tribunal le imparte carácter de finalidad a la sentencia parcial que se dicte. *Freire Ruiz et al. v. Morales, Hernández, supra*; R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2017, pág. 424. El propósito de esta regla es evitar la posible injusticia que causaría una dilación en emitir la sentencia respecto a una reclamación o alguna parte si se esperara hasta la adjudicación total en torno a todas las reclamaciones o todas las partes. R. Hernández Colón, *op. cit.*, pág. 424.

Una sentencia parcial que cumpla con esos requisitos será una determinación final y comenzarán a correr los términos dispuestos en la Reglas de Procedimiento Civil para las mociones y recursos post-sentencia. *US Fire Ins. v. AEE, supra*, pág. 969. En consecuencia, las partes tienen derecho a solicitar la revisión de dicho dictamen ante este Tribunal de Apelaciones mediante el recurso de apelación, conforme a la Regla 52 de las Reglas de Procedimiento Civil. Por otro lado, **si la determinación emitida por el tribunal no cumple con tales requisitos, la sentencia dictada por no ser final no es apelable, sino que es una resolución interlocutoria, revisable solo mediante recurso de *certiorari*.** *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 95 (2008); *Johnson & Johnson v. Mun. San de Juan, supra*; *García v. Padró, supra*, págs. 333-334. (Énfasis nuestro).

En ese sentido, la resolución se diferencia de la sentencia en cuanto a que la primera "es un dictamen que pone fin a un incidente dentro de un proceso judicial, respecto al procedimiento o a los derechos y obligaciones de algún litigante o, en cuanto a algún aspecto de la reclamación o reclamaciones que se están dilucidando en el proceso, ya sea éste anterior o posterior a la sentencia." *Torres Martínez v. Torres Ghigliotty, supra*, págs. 95-96. Mientras que la sentencia pone fin a la controversia entre las partes mediante una adjudicación final. *Id.*; *Rodríguez v. Tribl. Mpla. y Ramos*, 74 DPR 656, 664 (1953). Asimismo, la resolución interlocutoria, distinto a la sentencia, puede ser revisable mediante recurso de *certiorari* ante este Tribunal de Apelaciones de conformidad con la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, siempre que se presente en el término establecido por ley y se cumplan con los criterios establecidos en la sección anterior.

### C. La doctrina de la "ley del caso"

La doctrina de la ley del caso responde a la necesidad de darle finalidad a las adjudicaciones judiciales. *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012) (SENTENCIA); *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 141 (1967) Su propósito es asegurar un trámite judicial ordenado y pronto de los litigios, al igual que promover la estabilidad y certeza del derecho. *Rosso Descartes v. BGF, supra*, pág. 193 (SENTENCIA); *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 222 (1975). De esta manera, las partes pueden orientar su actuación procesal conforme a determinaciones judiciales claras, confiables y certeras. *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 754 (1992).

En virtud de esta doctrina, la norma general dispone que las determinaciones y asuntos decididos y considerados por el foro primario o por un tribunal apelativo, de ordinario, no pueden reexaminarse. *Cacho Pérez*

*v. Hatton Gotay y otros*, 195 DPR 1, 9 (2016); *Rosso Descartes v. BGF, supra* (SENTENCIA). Estas determinaciones que constituyen la ley del caso son todas aquellas cuestiones finales consideradas y decididas por el Tribunal. *Cacho Pérez v. Hatton Gotay y otros, supra.* Es decir, **la aplicación de la doctrina procede, solamente, cuando exista una decisión final de la controversia en sus méritos.** *Cacho Pérez v. Hatton Gotay y otros, supra.* (Énfasis nuestro). Como consecuencia, las determinaciones así emitidas obligan tanto al tribunal inferior, como al propio foro que las dictó, impidiendo que los asuntos ya resueltos sean reexaminados. *Mgmt. Adm. Servs. Corp. v. ELA,* 152 DPR 599, 606-607 (2000).

Ahora bien, la doctrina de la ley del caso no constituye un mandato invariable o inflexible. *Núñez Borges v. Pauneto Rivera, supra*; *Don Quixote Hotel v. Tribunal Superior,* 100 DPR 19, 30 (1971). Se trata de una sana práctica judicial dirigida a respetar como definitivas las controversias que han sido debidamente sometidas, litigadas y resueltas por un tribunal, mas no de una regla inviolable que deba aplicarse mecánicamente en toda circunstancia. *Núñez Borges v. Pauneto Rivera, supra,* pág. 755; *Torres Cruz v. Municipio de San Juan, supra,* pág. 223; *Don Quixote Hotel v. Tribunal Superior, supra.*

Por ello, **cuando la aplicación estricta de la ley del caso previamente establecida resulta errónea** y conduce a una grave injusticia, **el mismo foro sentenciador** o un tribunal de jerarquía superior **puede apartarse de dicha determinación y aplicar una norma jurídica distinta.** *Mgmt. Adm. Servs. Corp. v. ELA, supra,* pág. 607. (Énfasis nuestro). En ese sentido, el Tribunal Supremo ha reiterado que "[s]ólo cuando se presenta un atentado contra los principios básicos de la justicia, es que los tribunales pueden descartar la aplicabilidad de la doctrina de la ley del caso". *Cacho Pérez v. Hatton Gotay y otros,* supra, pág. 10.

Asimismo, una determinación judicial previamente emitida no debe ser alterada, salvo que del expediente surja una variación sustancial en los hechos del caso o un cambio en el estado de derecho aplicable. *Rosso Descartes v. BGF, supra*, págs. 192-193 (SENTENCIA); *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 607. En consecuencia, aunque la doctrina de la ley del caso no es rígida ni de aplicación absoluta, descartarla solo resulta procedente cuando su observancia conduce a resultados manifiestamente injustos. *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 608.

Cónsono con lo anterior, se ha reconocido que un segundo juez de un foro primario puede modificar la determinación emitida por un primer juez dentro del mismo caso cuando dicha determinación produce resultados claramente injustos. *Núñez Borges v. Pauneto Rivera, supra*, pág. 755; *Torres Cruz v. Municipio de San Juan, supra*, pág. 221. De igual forma, nuestro Alto Foro ha resuelto que "**en nuestra jurisdicción, un juez de instancia no queda atado por sus determinaciones interlocutorias, aun cuando éstas no hayan sido objeto de reconsideración o revisión**." *Mgmt. Adm. Servs. Corp. v. ELA, supra*, págs. 608-609. (Énfasis nuestro).

### III.

En el recurso ante nos, la peticionaria sostiene que el TPI erró: (1) al dejar sin efecto una *Sentencia Sumaria Parcial* que, a su juicio, había advenido final y firme, pues ello —alega— constituía una facultad exclusiva de este Tribunal de Apelaciones; (2) al entrar a considerar la naturaleza, méritos y alcance de dicha sentencia parcial, cuya revisión no fue solicitada oportunamente ante el foro apelativo; y (3) al determinar que una resolución interlocutoria constituía la ley del caso y, con ello, un impedimento para una sentencia sumaria final.

Por estar íntimamente relacionados entre sí, atendemos los señalamientos de error en conjunto.

De entrada, el expediente revela que el 18 de noviembre de 2025 el foro primario declaró Ha Lugar la *Moción sobre Reconsideración* de la parte recurrida y dejó sin efecto la determinación contenida en la *Sentencia Sumaria Parcial* de 2021, en cuanto validaba el documento titulado *Joint Tenancy with Right of Survivorship*, por entenderla contradictoria con la *Resolución* emitida en 2019 respecto a la capacidad mental de la señora Pons Frontera. A esos fines, el TPI razonó, además, que la *Sentencia Sumaria Parcial* de 2021 no resolvió totalmente las controversias planteadas y que tampoco incorporó la certificación exigida por la Regla 42.3 de Procedimiento Civil, *supra*, por lo cual no constituía una sentencia parcial final y, en consecuencia, era susceptible de revisión por el propio foro.

En primer lugar, señalamos que de los autos surge que la *Sentencia Sumaria Parcial* de 2021 no cumplió con los requisitos de finalidad exigidos por la Regla 42.3 de Procedimiento Civil, *supra*, pues el foro primario no certificó expresamente que no existía razón para posponer su dictamen ni le confirió carácter final. En consecuencia, dicha determinación no constituía una sentencia final y firme, sino una resolución interlocutoria susceptible de revisión por el propio tribunal que la emitió. En ese escenario, contrario a lo planteado por la peticionaria, el foro primario no estaba impedido de reconsiderar su determinación, ni ello constituía una facultad exclusiva de este Tribunal.

Asimismo, la doctrina de la ley del caso no es de aplicación automática ni exclusiva del foro apelativo. Dicha doctrina constituye una norma de sana administración judicial que puede ser invocada por el propio foro primario, el cual, además, conserva la facultad de apartarse de determinaciones previas cuando estas no son finales o cuando su mantenimiento conduce a resultados injustos o contradictorios. En ese contexto, un segundo juez del mismo foro no queda vinculado por una determinación interlocutoria errónea

emitida con anterioridad en el mismo caso. *Núñez Borges v. Pauneto Rivera*, *supra*, pág. 755; *Torres Cruz v. Municipio de San Juan*, *supra*, pág. 221.

Por otro lado, en *Núñez Borges v. Pauneto Rivera, supra,* el Tribunal Supremo expresó que los Tribunales de Primera Instancia "deben realizar el esfuerzo máximo posible por evitar la emisión de dictámenes contradictorios e inconsistentes". Esa norma cobra especial fuerza en este caso, donde el propio TPI identificó una contradicción entre (1) la *Resolución* final y firme de 2019 sobre la incapacidad mental de la señora Pons Frontera desde 2006 y (2) el efecto práctico de la *Sentencia Sumaria Parcial* de 2021 al validar, en alguna medida, la eficacia del instrumento suscrito en 2008. En ese escenario, mantener ambos dictámenes habría producido pronunciamientos contradictorios dentro del mismo expediente.

En atención a lo anterior, concluimos que el foro primario actuó dentro de su facultad al reconsiderar y dejar sin efecto una determinación que, según concluyó, carecía de finalidad conforme a la Regla 42.3 y que, además, resultaba incompatible con una resolución previa que había advenido final y firme. Por tanto, *expedimos* el recurso de *certiorari* y *confirmamos* la *Resolución* recurrida.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y confirmamos la *Resolución* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos y que se proceda finalmente con la liquidación de la comunidad.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones